FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 31, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHEILA M., | No. 4:21-CV-03129-JAG |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 13, 14. Attorney D. James Tree represents Sheila M. (Plaintiff); Special Assistant United States Attorney Katherine B. Watson represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge by operation of Local Magistrate Judge Rule (LMJR) 2(b)(2) as no party returned a Declination of Consent Form to the Clerk's Office by the established deadline. ECF No. 17. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## I.     JURISDICTION

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income in December 2010, Tr. 159, alleging she is disabled

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

due to depression, memory problems, and degenerative disc disease, Tr. 185. Plaintiff alleges an onset date of June 1, 2008. Tr. 46. The Commissioner denied the applications initially and upon reconsideration. Tr. 20. Administrative Law Judge (ALJ) Stephanie Martz held a hearing on August 2, 2012, Tr. 40-71, and denied benefits on December 7, 2012, Tr. 20-35. The Appeals Council denied review on March 27, 2014. Tr. 1-6. Plaintiff appealed to the district court. Finding error in the assessment of Plaintiff's mental impairments, the Court remanded for further proceedings. Tr. 538-59.

ALJ Martz held a second hearing on January 28, 2016, Tr. 458-98, and denied benefits again on March 17, 2016, Tr. 433-35. Plaintiff again appealed to the district court. On the parties' motion, the Court remanded to the Commissioner for further proceedings. Tr. 881-84.

ALJ C. Howard Prinsloo held a third hearing on November 28, 2018, Tr. 831-52, and denied benefits again on January 25, 2019, Tr. 806-30. Plaintiff again appealed to the district court. The Court remanded for further proceedings because the ALJ erred by failing to fully consider and discuss the opinions of Rana Aldaw, MD, and Debbi Spitler, PA-C. Tr. 1222.

ALJ Prinsloo held a fourth hearing on June 15, 2021, Tr. 1097-1127, and denied benefits again on July 21, 2021, Tr. 1066-96. The ALJ's July 2021 decision is the Commissioner's final decision, 20 C.F.R. §§ 404.984, 416.1484, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on October 1, 2021. ECF No. 1.

## II.    STATEMENT OF FACTS

Plaintiff was born in 1972 and was 35 years old as of her alleged onset date. Tr. 48. She has a GED and past work as a motel cleaner, janitor, home caregiver, newspaper deliverer, production assembler, sandwich maker, and agricultural sorter/box maker. TR 48-50, 66, 1084. Plaintiff has alleged limitations stemming

from fibromyalgia, degenerative disc disease, pain disorder, borderline personality disorder, Tr. 834, depression, and anxiety, Tr. 1100.

### III.   STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098.

Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health & Hum. Servs.*, 839 F.2d 432, 433 (9th Cir. 1988).

### IV.   SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a),

416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  In steps one through four the claimant bears the burden of establishing disability.  *Tackett*, 180 F.3d at 1098-99.  This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show: (1) the claimant can make an adjustment to other work; and (2) the claimant can perform specific jobs that exist in the national economy.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).  If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V.     ADMINISTRATIVE FINDINGS

On July 21, 2021, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.  Tr. 1066-96.

At **step one**, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date—June 1, 2008.  Tr. 1072.

At **step two**, the ALJ determined Plaintiff had the following severe impairments: fibromyalgia, degenerative disc disease, obesity, affective disorder, anxiety, pain disorder, and borderline personality disorder.  *Id.*

At **step three**, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 1072-74.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found she could perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except:

> [S]he is limited to simple, routine, repetitive tasks[;] She can have only occasional and superficial interaction with coworkers

and supervisors[;] She should not work with the general public[; and] She would need to work independently.

Tr. 1074.

At *step four*, the ALJ found Plaintiff is capable of performing past relevant work as an agricultural sorter/box maker. Tr. 1084.

At *step five*, the ALJ found that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff was also capable of performing other jobs that existed in significant numbers in the national economy, including the jobs of collator operator, school bus monitor, and small parts assembler. Tr. 1085-86.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the alleged onset date through the date of the decision. Tr. 1086.

## VI.   ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred by: (1) discounting Plaintiff's subjective complaints; (2) improperly assessing medical opinions; (3) improperly assessing Plaintiff's upper extremity disorders; and (4) finding Plaintiff's RFC allowed her to transition to other work.

## VII.   DISCUSSION

A.   **The ALJ Did Not Err by Discounting Plaintiff's Subjective Complaints.**

Plaintiff alleges the ALJ improperly disregarded her subjective symptom reports. ECF No. 19 at 19-26. It is the province of the ALJ to make determinations regarding a claimant's subjective complaints. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be

supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "General findings are insufficient; rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834 (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, he found Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 1075. The ALJ noted that Plaintiff wanted disability benefits and that she put a great deal of effort into obtaining them. Tr. 1079. Plaintiff told her doctor that she wanted "to get on disability," Tr. 1077, 1062, and she became upset with healthcare providers when she thought they were not helping her do that, Tr. 1033-34, 1078, 1613. Plaintiff once asked to be diagnosed with an autoimmune disease because she thought it would be more likely to qualify her for benefits than fibromyalgia. Tr. 1062, 1077. Similarly, Plaintiff reported multiple sclerosis symptoms and insisted she be diagnosed with MS. Tr. 1031, 1076.

In contrast to the effort Plaintiff puts toward seeking benefits, she has made little attempt to treat her claimed symptoms. Tr. 756, 1076, 1079. Plaintiff often declined mental health therapy when recommended, Tr. 1057, 1065, 1077-78, and

has engaged in counseling only minimally, 1042-49, 1077, 1510, 1613. She has also declined recommended medications. Tr. 739, 1006, 1076. Plaintiff claims this is because she objects to the use of pharmaceutical drugs, Tr. 894, but this is belied by the record—Plaintiff regularly takes pharmaceutical drugs, and sometimes specifically requests them. Tr. 391, 394, 397, 1064, 1066, 1077. Despite complaints of debilitating gastrointestinal symptoms, Plaintiff refused a colonoscopy. Tr. 1007, 1077. And, although she was advised that caffeine was causing some of her symptoms, Tr. 380, Plaintiff continued to drink more than eight cups of coffee every day, Tr. 745, 1077.

Plaintiff's statements to healthcare providers reflect a desire for benefits more than they reflect her condition. During at least one encounter with a treating doctor, Plaintiff was "tearful intermittently when she fe[lt] it m[ight] benefit her." Tr. 1034, 1076. Plaintiff reported pain on all eighteen trigger points while being evaluated for fibromyalgia. Tr. 1076, 1542. But her descriptions of pain did not correlate to the activity she was doing: Plaintiff would repeat that she felt pain all over whenever she was asked to perform a maneuver. Tr. 1076, 1542. Notably, Plaintiff's "score on the Structured Interview of Malingered Symptomatology (SIMS) was strongly indicative of symptoms exaggeration and/or attempts to feign a range of cognitive, affective, or other psychological problems." Tr. 1076 (quoting Tr. 303).

The Court finds the ALJ did not err. Because the ALJ identified affirmative evidence of malingering, he did not need to provide additional reasons to reject Plaintiff's statements regarding the intensity of her symptoms. *See Carmickle v. Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).

Plaintiff argues that a SIMS score alone cannot conclusively establish malingering and that the ALJ took other evidence of malingering out of context. ECF No. 13 at 25. The ALJ, however, did not rely on the SIMS score alone, *see*

Tr. 1075-78, and because his interpretation of the evidence is reasonable, this Court accepts the ALJ's interpretation of the evidence. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

In addition to finding affirmative evidence of malingering, the ALJ gave other specific, clear, and convincing reasons for rejecting Plaintiff's testimony about the severity of her symptoms. Tr. 1075-78. Many of Plaintiff's statements were inconsistent with the record. Although Plaintiff now claims that her mental health symptoms prevent her from working, those symptoms are longstanding, Tr. 55-56, 301, 735, 739, 1076-78, and did not prevent Plaintiff from engaging in substantial gainful activity in the past, 48-50. Tr. 1076. Plaintiff told Dr. Billings she left that work for physical reasons and that she mostly got along with her coworkers. Tr. 1078, 1531. When seen for physical issues, Plaintiff's mood and affect were normal. Tr. 789, 1077. Additionally, examination results did not provide objective support for Plaintiff's claims. Tr. 299-304, 391-94, 1034, 1076, 1525.

Plaintiff argues the ALJ's reasons for discrediting Plaintiff were improper, ECF No. 13 at 20-27, but the Court disagrees. The ALJ may decide an impairment is not disabling if it did not prevent the claimant from working in the past and the impairment has not significantly worsened in the interim. *See Gregory v. Bowen*, 844 F.2d 664, 667 (9th Cir. 1998). Contradictions with the medical record are also a proper reason for discounting a claimant's symptom claims. *Carmickle*, 533 F.3d at 1161. As is evidence of motivation to obtain benefits. *See Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992).

An ALJ may also consider the lack of treatment as one reason among others to discount a claimant's claims of mental health symptoms. *Kjeldgaard v. Colvin*,

No. CV-12-00410-JTR, 2014 WL 1285907, at *4 (E.D. Wash. Mar. 28, 2014).[1] And while it cannot serve as the sole basis for disregarding a claimant's reports, support from objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ's interpretation of the objective records as not substantiating Plaintiff's complaints was reasonable. Tr. 1075-78. The Court therefore finds the ALJ offered sufficient clear and convincing reasons for discounting Plaintiff's subjective reports.

### B. The ALJ Properly Assessed the Medical Opinions.

Plaintiff argues the ALJ erred by failing to properly consider and weigh the opinion evidence. ECF No. 13 at 6-20. The Court disagrees.

As this claim was filed before March 27, 2017, the prior framework for evaluating opinion evidence applies. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. There are three types of physicians under that framework: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but examine the claimant's file] (non-examining physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more

---

[1] Plaintiff points out a claimant should not be discredited for failing to pursue treatment she cannot afford. ECF No. 13 at 23. But there is no evidence that Plaintiff declined any treatments because they were unaffordable in the last ten years. *See id.* More recently, Plaintiff has declined referrals without regard to affordability. *See* Tr. 1057, 1065.

ORDER GRANTING DEFENDANT'S MOTION . . . - 9

weight than a non-examining physician's opinion. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.*

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only for "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.*

1. **_Christina Zoric, ARNP._**

NP Zoric opined that Plaintiff is limited to frequent handling, fingering, and feeling. Tr. 1544. Plaintiff argues the ALJ's reasons for rejecting NP Zoric's manipulative limitations were insufficient. ECF No. 13 at 4, 7-8. The ALJ found that Zoric's manipulative limitations were unsupported by her own examination findings, Tr. 1080, which showed Plaintiff was able to make a full fist with both hands bilaterally, touch her thumb to the hip of each finger, manipulate a button, and turn a doorknob with both hands, Tr. 1542. She was also able to pick up and manipulate a pen with no issues. *Id.* NP Zoric also observed that Plaintiff's description of pain did not correlate to the activity she was doing. *Id.* This was a proper basis for discounting NP Zoric's manipulative limitations. *See* 20 C.F.R. §§ 404.1527(c)(4), 404.1527(f), 416.927(c)(4), 416.927(f).

Plaintiff argues the ALJ's decision cannot be affirmed based on *post hoc* rationalizations, ECF No. 15 at 4-5, but the ALJ specifically found that NP Zoric's limitations were not "fully supported by her exam findings," Tr. 1080, and noted NP Zoric's observation that Plaintiff's descriptions did not correlate to her activities, Tr. 1076. The ALJ also found that "the longitudinal history of the

records show no significant handling, fingering or feeling limitations . . . ." Tr. 1080. This too was a proper basis for discounting NP Zoric's manipulative limitations. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

The ALJ's decision in this regard is supported by substantial evidence and this Court will not disturb it. *See Bayliss*, 427 F.3d at 1216.

### 2. *Desmond Tuason, MD, and Norma Staley, MD.*

Dr. Tuason and Dr. Staley, state agency medical consultants, opined that Plaintiff would be limited to frequent handling. Tr. 1164, 1182-83. The ALJ rejected their opinion because it was inconsistent with the record of largely unremarkable physical examinations, improvement with medication, and Plaintiff's history of exaggeration. Tr. 1081. This is an appropriate basis for rejecting the opinions of non-examining sources. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Plaintiff argues the ALJ erred because Tuason and Staley's limitation was consistent with NP Zoric's manipulative limitations. ECF No. 13 at 8-9. As discussed above, however, the ALJ did not err by rejecting Zoric's manipulative limitations.

Even if Plaintiff were limited to frequent handling, the vocational expert testified this would not preclude her from performing the jobs of collator operator, school bus monitor, or small parts assembler. Tr. 1119. Plaintiff argues she would not be able to transition to those jobs because she could not survive the training period. ECF No. 13 at 9 (citing Tr. 1125). But the vocational expert testified that those jobs would only require a short demonstration, Tr. 1124, which is within Plaintiff's RFC, Tr. 1074.

### 3. *Rana Aldaw, MD, 2018.*

The ALJ did not credit Dr. Aldaw's opinion that Plaintiff would miss work twice a month because Dr. Aldaw did not provide support for her opinion outside of restating Plaintiff's subjective reports. Tr. 1082. The ALJ also noted that Dr.

Aldaw's opinion was inconsistent with the normal findings of her physical examination and the evidence that Plaintiff exaggerates her symptoms. *Id.* Plaintiff argues this was error because normal objective results are compatible with debilitating fibromyalgia. ECF No. 13 at 9-11. As discussed above, however, the record supports the ALJ's finding that Plaintiff's symptoms are exaggerated. And, because Dr. Aldaw provided no other explanation for her opinion, it was permissible for the ALJ to reject it. *See Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020). The inconsistency between Dr. Aldaw's opinion and the normal findings from her physical examination was also a specific and legitimate reason for the ALJ to reject Dr. Aldaw's 2018 opinion. *See Tommasetti*, 533 F.3d at 1041.

4.    *Rana Aldaw, MD, 2019.*

The ALJ rejected Dr. Aldaw's 2019 opinion that Plaintiff is severely limited and incapable of even sedentary work because Dr. Aldaw provided no explanation outside of restating Defendant's subjective complaints. Tr. 1082. Plaintiff argues this was error because objective evidence supports Dr. Aldaw's findings. ECF No. 13 at 11-12. Even if there is objective evidence that could support Dr. Aldaw's conclusions, Dr. Aldaw herself did not use any of that evidence to explain her conclusion. *See* Tr. 1519. Instead, she wrote: "per patient, unable to sit or stand for a long time." *Id.* As Dr. Aldaw relied exclusively on Plaintiff's self-reports to conclude Plaintiff would be unable to sit or stand for a long time, and the ALJ properly determined Plaintiff's reports are unreliable, the ALJ did not err by rejecting Dr. Aldaw's opinion. *See Tommasetti*, 533 F.3d at 1041.

Additionally, the ALJ also rejected Dr. Aldaw's opinion because it was inconsistent with her own treatment notes showing largely unremarkable physical findings and recommending only minimal treatment. Tr. 1082. These were also specific and legitimate reasons for rejecting Dr. Aldaw's opinion. *See Ford*, 950

F.3d at 1154.  Plaintiff offers an alternative explanation for Dr. Aldaw's unremarkable physical findings and failure to recommend significant treatment, ECF No. 13 at 12, but the Court will not reweigh the evidence or substitute its own judgment for the ALJ's judgment in this regard.  *See Tackett*, 180 F.3d at 1098.

### 5. *Nancy Schwarzkopf, ARNP.*

NP Schwarzkopf opined that Plaintiff is severely limited and incapable of even sedentary work.  Tr. 715.  The ALJ rejected NP Schwarzkopf's opinion because it was based on Plaintiff's unreliable self-reports and inconsistent with the record.  Tr. 1083.

On a previous appeal, the Court upheld the ALJ's reasons for rejecting NP Schwarzkopf's opinion.  Tr. 1218.  The law of the case doctrine generally prohibits the Court from reconsidering an issue that has already been decided.  *See Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016).  Therefore, the Court will again affirm the ALJ's consideration of NP Schwarzkopf's opinion.  *See id.*

Plaintiff argues the law of the case doctrine does not apply because the evidence is substantially different on remand.  ECF No. 13 at 13.  Plaintiff, however, points only to new evidence that is similar to the evidence already in the record and does not bear on the ALJ's reasons for rejecting NP Schwarzkopf's opinion.  *See id.*  The evidence was not substantially different on remand and the Court will not reconsider its decision.  *See Stacy*, 825 F.3d at 567.

Notably, however, were the Court to reconsider the question, it would still uphold the ALJ's decision.  As stated in the last decision, the ALJ previously rejected NP Schwarzkopf's opinion because it was inconsistent with the longitudinal record.  TR. 1218.  This was a specific and legitimate reason for rejecting NP Schwarzkopf's opinion.  *See Tommasetti*, 533 F.3d at 1041.  In his more recent decision, the ALJ also noted that NP Schwarzkopf's opinion was based primarily on Plaintiff's self-reports, which are not entirely credible as

discussed above. Tr. 1083. This was also a specific and legitimate reason for rejecting NP Schwarzkopf's opinion. *See Tommasetti*, 533 F.3d at 1041.

      6.    **<u>Emma Joan H. Billings, Ph.D.</u>**

The ALJ gave some weight to Dr. Billings's 2019 opinion. Tr. 1081. Dr. Billings opined that Plaintiff "would have difficulty working due to her strong belief that she is unable to stand, walk or sit for more than a few minutes at a time," and that "her easy irritability and mild hostility would likely be a barrier to her obtaining and or maintaining employment." Tr. 1537. The ALJ concluded that Dr. Billings's assessment of mental impairments was consistent with the RFC. Tr. 1081.

Plaintiff argues these limitations preclude substantial gainful activity and that the ALJ erred by concluding otherwise.[2] ECF No. 13 at 16-17. Dr. Billings, however, did not state that Plaintiff's impairments would prevent her from engaging in substantial gainful activity. Rather, Dr. Billings stated that Plaintiff's impairments would be a limitation without stating the degree of limitation. Tr. 1537. A vague statement that an impairment will cause some degree of limitation does not compel a finding of disability. *Cf. Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) ("Dr. Manos' mere statement that Meanel experienced *some* diminution in her concentration skills falls short of an informed opinion that Meanel's pain and diminished concentration skills would significantly interfere with her ability to work."). The ALJ reasonably interpreted Dr. Billings's opinion of mental impairments as consistent with the RFC. To the extent Dr. Billings opined on Plaintiff's physical limitations, it was appropriate for the ALJ to reject

---

[2] Plaintiff challenges the ALJ's consideration of Dr. Billings's 2019 opinion, but not the ALJ's consideration of Dr. Billings's 2012 opinion. *See* ECF No. 13 at 16-17.

that opinion because Dr. Billings did not examine Plaintiff and relied instead on Plaintiff's self-reports. *See Tommasetti*, 533 F.3d at 1041. The ALJ is responsible for resolving ambiguities in the record and the Court will not disturb the ALJ's determination. *See Ford*, 950 F.3d at 1149.

### 7. *Thomas Genthe, Ph.D.*

The ALJ gave little weight to Dr. Genthe's opinion that Plaintiff had marked limitations in various areas. Tr. 1082. Dr. Genthe opined that Plaintiff's marked limitations would last six months. Tr. 1082, 1513. The ALJ rejected Dr. Genthe's opinion, in part, because limitations lasting only six months do not meet the durational requirements for disability. *See* Tr. 1082; 20 C.F.R. §§ 404.15209, 416.909. This was a specific and legitimate reason for rejecting Dr. Genthe's opinion. *See Rebensdorf v. Berryhill*, 773 F. App'x 874, 877 (9th Cir. 2019).

Plaintiff argues it does not matter how long Dr. Genthe opined the limitations would last because Plaintiff's onset date was nine years ago. ECF No. 13 at 18. The Court rejects this argument. Although some of Plaintiff's impairments may have begun more than nine years ago, Dr. Genthe did not opine that the limitations he observed began more than nine years ago. Tr. 1513.

Plaintiff also argues Dr. Genthe was incorrect in opining Plaintiff's limitations would last only six months. ECF No. 13 at 18-19. Again, the Court will not substitute its own judgment for the ALJ's or Dr. Genthe's. *See Tackett*, 180 F.3d at 1097.

The ALJ also found that Dr. Genthe's opinions were not fully supported by his own examination findings or the longitudinal record. *See* Tr. 1082. These too were specific and legitimate reasons for rejecting Dr. Genthe's opinion. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Plaintiff argues that these reasons were incorrect and offers evidence that could support a different decision, ECF No. 13 at

17-18. The ALJ provided specific and legitimate reasons supported by substantial evidence and his determination is conclusive. *See Sprague*, 812 F.2d at 1229-30.

8. **Brent Packer, MD.**

Dr. Packer reviewed Dr. Aldaw's and Dr. Genthe's reports and concurred with their opinions. Tr. 1082, 1507-08. The ALJ gave little weight to Dr. Packer's concurrence for the same reasons he gave little weight to the underlying opinions of Dr. Genthe and Dr. Aldaw. Tr. 1082. The Court affirms for the same reasons.

Plaintiff argues specifically that it was inappropriate for the ALJ to reject Plaintiff's claimed symptoms due to Plaintiff's failure to engage in treatment. *See* ECF No. 13 at 19-20. As discussed above this is an appropriate factor for the ALJ to consider in combination with the several other reasons the ALJ gave for discounting Plaintiff's symptom claims.

9. **Debbi Spitler, PA-C.**

The ALJ gave little weight to the low global assessment of functioning (GAF) scores opined by PA Spitler. Tr. 1083-84. The ALJ observed that GAF scores incorporate external factors irrelevant to the disability determination including employment, homelessness, and financial hardships. Tr 1083. This is a specific and legitimate reason for discounting PA Spitler's opinion. *See Camarena v. Kijakazi*, No. 20-36083, 2021 WL 5905720, at *1 (9th Cir. Dec. 14, 2021).

The ALJ also noted that the GAF score in this case was based on Plaintiff's unreliable subjective self-reports. Tr. 1083. This was also a specific and legitimate reason for rejecting PA Spitler's opinion. *See Tommasetti*, 533 F.3d at 1041.

Finally, the ALJ found that PA Spitler's opinion was inconsistent with her own treatment records showing adequate overall functioning. Tr. 1084. This was another specific and legitimate reason for rejecting PA Spitler's opinion. *See Tommasetti*, 533 F.3d at 1041.

Plaintiff argues there was evidence in the record to support PA Spitler's opinion, ECF No. 13 at 20, but the Court will not disturb the ALJ's reasonable interpretation of the evidence. *See Sprague*, 812 F.2d at 1229-30.

C. **The ALJ Properly Determined Plaintiff's Severe Impairments.**

Plaintiff argues the ALJ erred at step two of the sequential evaluation process by failing to account for an upper extremity disorders that significantly limited her handling. ECF No. 13 at 3-5.

At step two, the ALJ must determine whether the claimant has any medically determinable severe impairments. 20 C.F.R. § 404.1520(a)(ii). The impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. An impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities." 20 C.F.R. § 404.1522(a). Basic work activities are "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal quotation marks omitted). The claimant bears the burden of demonstrating that an impairment is medically determinable and severe. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

Here, the ALJ found fibromyalgia and degenerative disc disease among other severe impairments. Tr. 1072. Plaintiff claims to have an additional severe upper extremity disorder that limits her handling. S*ee* ECF No. 13 at 3-5. The opinions Plaintiff cites, however, attribute her symptoms to fibromyalgia or degenerative disc disease. *See, e.g., id.* at 4 (citing Tr. 309). Plaintiff does not cite evidence of any disorder other than fibromyalgia or degenerative disc disease. *See*

*id.* at 3-5.  The ALJ's determination of Plaintiff's severe impairments was reasonable and supported by substantial evidence and the Court will not reject the ALJ's determinations.  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

To the extent Plaintiff contends the ALJ erred by not including handling limitations in the RFC, the Court also disagrees.  The ALJ noted that the records showed no significant handling limitations.  Tr. 1080.  Plaintiff cites evidence that she has a slight loss of sensation and range of motion in her right arm, ECF No. 13 at 4, but it was reasonable for the ALJ to conclude that there was no significant limitation on Plaintiff's handling.  Notably, much of the evidence Plaintiff now cites for her alleged handling limitations comes from opinions the ALJ properly rejected, as discussed above.  *See* ECF No. 13 at 4.  And the rest of the evidence Plaintiff relies upon shows mild symptoms the ALJ reasonably interpreted as not significantly limiting Plaintiff's handling.  Accordingly, the Court affirms the ALJ's determination.  *See Andrews*, 53 F.3d at 1039.

**D.      The RFC Does Not Prevent Plaintiff from Transitioning to Other Work.**

The ALJ found that Plaintiff "can have only occasional and superficial interaction with coworkers and supervisors." Tr. 1074.  According to Plaintiff, this means she can have contact with coworkers and supervisors no more than one-third of the day.  ECF No. 13 at 5.  Plaintiff asserts that the vocational expert testified a person with that limitation would be unable to complete the training period required for competitive work.  ECF No. 13 at 5-6.

This was not the vocational expert's testimony, however.  TR. 1124-25.  Regarding the training period for collator operators and small parts assemblers, the vocational expert testified only as follows, "SVP2, it's a short demonstration. So they would demonstrate, and you'd be working on that. And they say it would go up to one month." Tr. 1124.  The vocational expert did not testify that the training period would require contact for more than one-third of the day.  *See id.*  Plaintiff's

counsel asked the vocational expert: "where the individual says, hey, a third of the way into the training period, I can't do this anymore. I need to be left alone, and I only need—I can only have superficial contact or I get overwhelmed. Would that be tolerated in competitive work?" Tr. 1125. The vocational expert responded: "No, it would not." *Id.* In other words, the vocational expert testified, unsurprisingly, that employers would not tolerate employees that cannot complete the training period. *See id.* But, again, the vocational expert *did not* testify that the training period would require contact for more than one-third of the day. *See id.*

Plaintiff disagrees with this characterization of the vocational expert's testimony. ECF No. 15 at 3-4. Rather, she claims a prefatory statement before her attorney's question makes it clear the vocational expert was testifying that Plaintiff would be unable to complete the training period. *See id.* To the contrary, counsel's prefatory statement makes the vocational expert's testimony more ambiguous and it does not compel the result or interpretation the Plaintiff suggests. *See* Tr. 1124-25.

Accordingly, the Court rejects Plaintiff's argument because it rests on a misinterpretation of the vocational expert's testimony. *Cf. Andrews*, 53 F.3d at 1039 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.").

## VIII. CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error and is affirmed. Therefore, **IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

3. The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.**

DATED March 31, 2023.



_____
JAMES A. GOEKE
UNITED STATES MAGISTRATE JUDGE